# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>vs. )<br>)<br>)<br>)<br>PABLO VIDARTE-HERNANDEZ and, )<br>ADIANGEL PARADES, )<br>    Defendants. )<br>) | CRIMINAL ACTION<br>NO. 19-40049-TSH |

## ORDER
August 19, 2020

**HILLMAN, D.J.**

### Background

On July 22, 2020, Pablo Vidarte-Hernandez ("Vidarte-Hernandez") and Adiangel Parades ("Parades" and, together with Vidarte-Hernandez, "Defendants") were charged by way of superseding indictment with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, 400 grams or more of fentanyl, 280 grams or more of cocaine base, and 500 grams or more of cocaine, in violation of 21 U.S.C. §846. They were arrested on July 23, 2020 and at their initial appearance, the Government moved for detention.

A detention hearing was held on July 30, 2020 and Defendants were arraigned and pled not guilty that same date. On July 31, 2020, Chief Magistrate Judge Kelle ordered both Defendants detained. In doing so, Chief Judge Kelley found that the rebuttable presumption

under 18 U.S.C. §3142(e)(3) applies because the Defendants are charged with a crime for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act, 21 U.S.C. §§801-904, but that the Defendants had presented sufficient evidence to rebut the presumption. However, based on the weight of the Government's evidence (overwhelming), the lengthy period of incarceration the Defendants face if convicted (ten year minimum mandatory which because they are both safety valve eligible, could be reduced to approximately three years[1]), the lack of stable employment (Vidarte-Hernandez), significant family ties outside the United States (Parades) and the fact that they are subject to deportation after serving any period of incarceration, Chief Judge Kelley found that by clear and convincing evidence that they are a danger to the community and by a preponderance of the evidence that they are a risk of flight.

Thereafter, Defendants filed a joint emergency motion to revoke Chief Magistrate Judge Kelley's detention order, *see* Docket No. 178. In support of their motion, Defendants assert that: (1) most of their alleged co-conspirators (other than the alleged ringleaders) have been released pending trial; (2) because they are safety-valve eligible they are facing significantly less than the ten year mandatory minimum that would otherwise apply; (3) the U.S. Probation Office recommended they be released pending trial without electric monitoring (although they are willing to be subjected to electric monitoring); (3) they each have local ties including significant others, children, extended family and employment, have been in the United States for significant periods of time, and are legal residents; and (4) Vidarte-Hernandez has no

---

[1] The Government estimates the potential sentence for the Defendants to be five to six years if they are safety-valve eligible while Defendants suggest it would be closer to three years. For purposes of this Order, I will accept the Defendants' calculation.

prior criminal record and Parades has one prior conviction which Chief Judge Kelley gave no weight (because the factual basis for the conviction was unclear and the punishment was insignificant). Additionally, Defendants argue that the Bail Reform Act imposes an unconstitutional and racially motivated presumption regarding individuals charged with a drug offense. More specifically, they assert that there is disparity nationally and in this District between the number of black defendants detained pending trial versus the number of white defendants (the number black defendants is significantly higher) which they allege is directly attributable to systemic racism.[2] Finally, Defendants argue that this Court should consider the impact of the COVID-19 pandemic on the interactions between attorneys and clients who are detained, particularly in light of the fact that counsel are in high risk categories and therefore, will not be able to have in person contact with their clients while they are incarcerated. Defendants also assert that the need for them to communicate through an interpreter further complicates their ability to communicate with counsel while they are incarcerated.[3]

## Discussion

### Standard of Review; Rebuttable Presumption

This Court conducts a *de novo* review of the orders detain defendants. The Defendants are charged with a drug offense for which the maximum penalty is 10 years or more—

---

[2] As did Chief Magistrate Judge Kelley, I will assume that the Defendants have propounded sufficient evidence to rebut the presumption and therefore, it is not necessary for me to address this argument.

[3] The Government argues that the Court should not consider the effect of the COVID-19 pandemic on the attorney client relationship because "such challenges are not grounds for release where the facts and evidence otherwise support pre-trial detention under the Bail Reform Act." *Opp. to Defs' Emerg. Mot. To Revoke or Amend Mag. Judge's Det. Order* (Docket No. 195), at p. 8 n.3. Assuming that the Court should consider such evidence, Defendants have failed to indicate how their release would permit them to have in-person contact with their attorneys given counsels' understandable concerns about limiting any potential exposure to the virus, or how their being released would obviate counsels' need to communicate with them through an interpreter.

consequently, the rebuttable presumption set forth in 18 U.S.C. §3142(e) applies. While there is a presumption that the Defendants are both a danger to the community and risk of flight, as stated previously, I find that the presumption has been rebutted and therefore, in order to detain the Defendants, the Government must establish by a preponderance of evidence that there are no conditions or combination of conditions that will assure their appearance as required, or by clear and convincing evidence that there are no conditions or a combination of conditions that will assure that they are not a danger to any other person and the community.

Defendants' Characteristics; Proposed Conditions

*Vidarte-Hernandez History and Characteristics*

Vidarte-Hernandez is forty-seven years old and was born in Uruguay. His parents reside in Uruguay and he maintains contact with them. He has two sisters and one brother all of whom reside in Fitchburg, Mass. Although he claims to maintain regular contact with his siblings, he could not provide the probation office with any contact information for them. Vidarte-Hernandez has lived in Fitchburg for fifteen years and has lived at his current address for about four years with his girlfriend and their seven-year-old child. Vidarte-Hernandez has a teenaged son from a prior marriage who lives in the United States with his mother—Vidarte-Hernandez pays child support. Vidarte-Hernandez entered the United States in 2000 and is a legal permanent resident. He has a Uruguay passport and visited Uruguay last year.

Vidarte-Hernandez reported that he was working as a mechanic in an auto repair shop where he rented space-- he stopped working in April 2020 due to the COVID-19 pandemic. He could not remember the name of the shop and reports it has closed. Vidarte-Hernandez reported that he previously used cocaine and most recently, heroin, but that he stopped using any drugs in

September 2019. He started taking suboxone in January 2020 when he began outpatient drug treatment.

*Parades' History and Characteristics*

Parades is 33 years old and was born in the Dominican Republic. He has lived in Massachusetts for 3 years and in Fitchburg, Mass. for approximately the past 2 years with his girlfriend, their child and two-step children. Parades entered the United States in 2009 and is a legal permanent resident. He possesses a Dominican Passport. Parades' parents, four sisters and brother live in the Dominican Republic. He maintains regular contact with them but has not visited the Dominican Republic since 2010.

Parades is a high school graduate. He has been employed as a foreman at a plastic company since January 2020. Before that, he was employed for about 3 months at a cardboard plant in Westminster, Mass. In 2013, Parades pled guilty to criminal possession of a 3rd degree controlled substance in New York state court for which he was sentenced to 2 years' incarceration with 3 months to be served followed by a term of supervised release. There was a bench warrant issued in connection with that case which was ultimately vacated.

*Proposed Conditions*

Defendants suggest that there are conditions or a combination of conditions that can be imposed to assure that they would appear as required and would not be a danger to any other person or the community. As to conditions regarding appearance, Defendants suggest a multitude of conditions that have shown success in courts outside of this jurisdiction, such as texting reminders to defendants regarding court appearances, providing transportation to court, providing child care, and assisting defendants in finding stable housing, employment or

education. However, Defendants general discussion of studies and beta programs instituted elsewhere fail to establish that such "conditions" are available in this Court, that if available they could be imposed during the ongoing pandemic and most importantly, that such conditions are relevant to their own circumstances and/or would increase the likelihood of their appearance. The only tangible conditions proposed by the Defendants are as follows: home confinement with electric monitoring, the ability seek and maintain employment, periodic in-person reporting, and the standard conditions of release proposed by the probation department (with travel restricted to the District of Massachusetts and surrendering of their passports).

<u>Whether Defendants Should be Released</u>

The Defendants are charged with conspiracy to distribute and possession with intent to distribute heroin, fentanyl, cocaine base, and cocaine. The investigation of the alleged drug conspiracy, which began in September 2018 and continued through about November 2019, revealed that the Defendants supplied large quantities of a fentanyl/heroin mixture on a regular basis to drug dealers who would then sell the drugs on the streets. Parades supplied the drugs to Vidarte-Hernandez who then supplied them to alleged co-conspirators/ringleaders, Pedro Baez ("Pedro") and Anthony Baez ("Anthony"), who resold the drugs. The Defendants were readily able to supply hundreds of grams of heroin (mixed with fentanyl) upon request. Vidarte-Hernandez, who represents he has always been an auto mechanic, was operating his drug distribution business out of his place of employment[4]. Additionally, Parades sold drugs

---

[4] The Government's evidence suggests that Anthony met Vidarte-Hernandez at a towing shop where he worked on multiple occasions, obtained drugs from him, and thereafter, completed drug deals with cooperating witnesses at other locations. Anthony was stopped by the police after a drug deal in Watertown, Mass. in September 2019 and most of the money (government funds) which the cooperating witnesses had just paid him during a controlled purchase of 500 grams of heroin/fentanyl was confiscated. Thereafter, Vidarte-Hernandez and Parades refused to deal with Anthony and would only deal with his father, Pedro.

(fentanyl/heroin, pills, and cocaine) to other customers. Many of the transactions were surveilled and the Defendants were captured on Title III intercepts negotiating prices and amounts between themselves and with Anthony, Pedro and/or other customers. If convicted, because of the large amount of drugs involved, the Defendants each face a ten-year mandatory-minimum sentence. However, they are both safety-valve eligible and if they make the requisite proffer and otherwise meet all the statutory requirements, their sentences could be reduced to approximately three years' incarceration. I agree with Chief Judge Kelley that the evidence against these Defendants is overwhelming. Accordingly, there is very strong likelihood that the Defendants will face a period of incarceration after which they will almost certainly be deported.

On this record, while I find that the Government has established by clear and convincing evidence that the Defendants are a danger, I further find there are conditions or a combination of conditions that can be imposed to protect others and the community. Such conditions include home confinement with electric monitoring—to be clear, Defendants would not be permitted to leave their place of residence except for emergencies, that is, they would not be permitted to work. However, I also find by a preponderance of the evidence that both Defendants are a serious risk of flight and for the following reasons, I further find that there are no conditions or combination of conditions that could assure their appearance as required. The Defendants are facing a multi-year period of incarceration followed by almost certain deportation. While they both have significant family ties to the United States, they also have significant family ties to their home countries where they would be deported. Both Defendants have maintained contact with their families in their home countries—Vidarte-Hernandez has recently visited Uruguay and has regular contact with his parents who still reside there, and Parades maintains regular contact

7

with his parents and siblings all of who still reside in the Dominican Republic. Defendants have no real estate or other assets to post as security for their appearance. That the Defendants co-conspirators, in particular Pedro and Anthony, were arrested in 2019 and they didn't flee is immaterial. Without knowing the extent to which the Government had infiltrated the Baez organization, it may not have been apparent to the Defendants that the Government's investigation would subsequently focus on them. The reality is that they are charged with a serious drug offense and there is no incentive for them to remain in the United States to face those charges given the overwhelming evidence against them and the near certainty of deportation and separation from their relatives in the United States after serving a sentence that would be in the range of 3 to 10 years. Accordingly, I am denying the Defendants' appeal and ordering them held pending trial.

## Conclusion

The Emergency Joint Motion to Revoke or Amend Magistrate's Detention Order (Docket No. 178) is ***denied***.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**U.S. DISTRICT JUDGE**